IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MOMOLU V.S. SIRLEAF, JR.,

    Plaintiff,

v.                                                                   Civil Action No. **3:15CV301**

EDDIE PEARSON, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Momolu V.S. Sirleaf, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983.[1] In his Complaint, Sirleaf argues that, during his incarceration at the Greensville Correctional Center ("GCC"), Defendants[2] have violated his right to practice his religion as a member of "the Jewish race and . . . the Jewish religion." (Compl. ¶¶ 2, 12 ECF No. 1.)[3] The Court construes Sirleaf to raise the following claims for relief:

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The named Defendants are: Eddie Pearson, the Warden of GCC (Compl. ¶ 3), and Jarratt, a colonel at GCC (*id.* ¶ 4).

[3] While the Complaint names "Plaintiffs," as previously explained by the Court to Sirleaf, "Momolu Sirleaf is the only individual who signed the Complaint. The action will proceed with Momolu Sirleaf as the sole plaintiff. To the extent any other inmate wishes to pursue an action under 42 U.S.C. § 1983, he must submit his own new civil action." (Mem. Order 1, ECF No. 6.)

Claim One: Defendants placed a substantial burden on Sirleaf's exercise of his religion in violation of (a) the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[4] and (b) the First Amendment[5] right to free exercise of his religion by placing Sirleaf's housing unit on lockdown for a bi-annual shakedown, which prevented Sirleaf from celebrating Rosh Hashanah in September 2014. (*Id.* ¶¶ 5–6, 12.)[6]

Claim Two: Defendants violated Sirleaf's Fourteenth Amendment[7] right to equal protection of the law by "allow[ing] the KAIROS retreat to be held, but den[ying] the scheduled Jewish holy day Rosh Hashanah to be held on the 2d and last day" in September 2014. (*Id.* ¶ 13.)

The matter is now before the Court on Defendants' Motion for Summary Judgment. (ECF No. 23.) Despite providing Sirleaf with appropriate *Roseboro*[8] notice, Sirleaf has not responded. This matter is ripe for judgment. For the reasons stated below, Defendants' Motion for Summary Judgment will be GRANTED.

## I. Summary Judgment Standard

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). "A fact is material if the existence or non-existence thereof could lead a jury to different resolutions of the case." *Thomas v. FTS USA, LLC*, No. 3:13cv825,

---

[4] 42 U.S.C. § 2000cc-1(a).

[5] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I.

[6] The Court corrects the spelling in the quotations from Sirleaf's submissions.

[7] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[8] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

2

October 2014 (*id.* Encl. B); (4) a copy of a September 21, 2014 Incident Report regarding GCC Cluster S3 (*id.* Encl. C); and, (5) a copy of the 2014 calendar for KAIROS at GCC (*id.* Encl. D).

While Sirleaf did not respond to the Motion for Summary Judgment, he has sworn to the contents of the Complaint under penalty of perjury. (Compl. 5.) Sirleaf has also submitted a Declaration of Religious Beliefs, which sets forth an overview of his "sincerely held religious beliefs." (ECF No. 4, at 1.) Because this document makes no reference to Rosh Hashanah, the Court has not considered it for purposes of summary judgment.

In light of the foregoing submissions, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Sirleaf.

## II. Pertinent Facts

Under Virginia Department of Corrections' ("VDOC") guidelines, all institutions that are classified as Security Level 3, such as GCC, must "complete a facility lockdown search at least twice per year." (Jarratt Aff. ¶ 4.) GCC "consists of three Clusters, with each cluster being the approximate size of a normal correctional facility." (*Id.*) Therefore, each cluster conducts a shakedown twice per year. (*Id.*)

During a shakedown, "all activities of the Cluster are locked down and cancelled and offenders are restricted to their cell[s]." (*Id.*) Offenders continue to receive basic necessities such as food, hygiene, and medical services. (*Id.* ¶¶ 4, 5.) "[M]ost programs and services are severely curtailed and offenders are not allowed out-of-cell activities." (*Id.* ¶ 4.) Religious services are suspended, but offenders are permitted to practice their faith inside their cells. (*Id.* ¶ 5.) During shakedowns, "regular functions and activities must be suspended in order to accomplish priority security measures, including searches for contraband." (*Id.*) "Of paramount

4

importance during a lockdown is the preservation of security and maintaining the safety and welfare of all offenders and staff." (*Id.*)

Assistant Warden Jarratt "schedule[s] institutional lockdowns at the beginning of each year." (*Id.* ¶ 6.) When scheduling lockdowns, he "make[s] every effort to avoid known major holidays and observances. However, it would be essentially impossible to accommodate every religious holiday observed by offenders at" GCC. (*Id.*) In September 2014, the shakedown of Cluster S3 was scheduled to occur September 21–26, 2014. (*Id.* Encl. A.) A search of Housing Unit 7 in Cluster S3, to which Sirleaf was assigned, was scheduled for September 22–23, 2014. (*Id.* ¶ 6; *id.* Encl. A.)

On September 4, 2014, an Institutional Chaplain at GCC sent to the Institutional Programs Manager a memorandum that provided guidance as to when the Jewish High Holy Days of Rosh Hashanah, Yom Kippur, and Sukkoth would be observed in 2014. (*Id.* Encl. B, at 1.) According to the memorandum, adherents of the Messianic Jewish and House of Yahweh faiths could observe Rosh Hashanah from sundown on September 25, 2014, through sundown on September 26, 2014. (*Id.* at 2.) No special meals were authorized, but group Rosh Hashanah services for offenders in Cluster S3 were scheduled to occur on September 26, 2014. (*Id.*) The Institutional Programs Manager approved the memorandum on September 23, 2014. (*Id.* at 1.)

The lockdown of Cluster S3 began at 10:45 a.m. on September 21, 2014. (Jarratt Aff. ¶ 9.) "Although offender Sirleaf was unable to participate in a group service during the lockdown, he was allowed to observe Rosh Hashanah in his cell." (*Id.* ¶ 8.) The shakedown of Cluster S3 was completed on September 25, 2014. (*Id.* Encl. C, at 1.) During the shakedown, staff confiscated five weapons, as well as suspected marijuana and heroin. (*Id.*) Accordingly, Cluster S3 was placed on modified lockdown "beginning with the breakfast meal on Friday,

5

September 26, 2014 and return[ed] to normal operations on Saturday, September 27, 2014."

(*Id.*) On September 27, 2014, after the modified lockdown concluded, offenders in Cluster S3 who adhere to the KAIROS faith were able to meet for the scheduled reunion. (Jarratt Aff. ¶ 11; *see also id.* Encl. D.)[9]

Sirleaf requested that GCC provide "an alternative day of congregational observance for Rosh Hashanah." (Compl. ¶ 8.) However, the request was denied. (*Id.*)[10] The Institutional Chaplain had advised staff at GCC that "Jewish tenets do not allow its followers to change the Rosh Hashanah observance." (Jarratt Aff. ¶ 10.)

### III. RLUIPA and Free Exercise Claims

#### A. RLUIPA

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—
> **(1)** is in furtherance of a compelling governmental interest; and
> **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). Thus, to begin, Sirleaf must demonstrate that Defendants' policies impose a "substantial burden" on his religious exercise. In determining if Sirleaf has met this standard, the Court must answer two questions: "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?" *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004); *see Couch v. Jabe*, 679 F.3d 197, 200–01 (4th Cir. 2012) (employing similar two-part inquiry).

---

[9] Sirleaf contends that the KAIROS reunion was allowed to take place on September 26, 2014, the last day of Rosh Hashanah, while the lockdown was still in place. (Compl. ¶ 9.) Sirleaf, however, has failed to demonstrate personal knowledge of this fact.

[10] Assistant Warden Jarratt contends that, to the best of his knowledge, Sirleaf "did not submit a request for special consideration or a rescheduling of Rosh Hashanah." (Jarratt Aff. ¶ 10.)

### 1. Whether the Burdened Activity Is a Religious Exercise

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Couch*, 679 F.3d at 200 (quoting 42 U.S.C. § 2000cc–5(7)(A)). Sirleaf's claim implicates one activity—the celebration of Rosh Hashanah. (*See* Compl. ¶¶ 5–6, 12.) Given RLUIPA's broad definition of religious exercise, and Defendants' failure to address this portion of the inquiry, the Court assumes this activity constitutes religious exercise. See *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *3 (E.D. Va. Nov. 18, 2011) (assuming inmate's enrollment in seminary course constituted religious exercise for purposes of RLUIPA).

### 2. Sirleaf Fails to Demonstrate a Substantial Burden

RLUIPA fails to define the term substantial burden. *See Couch*, 679 F.3d at 200. The United States Court of Appeals for the Fourth Circuit determined that the Supreme Court's jurisprudence interpreting the Free Exercise Clause provides guidance on the issue. *See Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). Thus, the Fourth Circuit has explained that a substantial burden

> is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand.

*Couch*, 679 F.3d at 200 (alterations and omission in original) (quoting *Lovelace*, 472 F.3d at 187). In conducting the substantial burden inquiry, the plaintiff "is not required . . . to prove that the exercise at issue is required by or essential to his [or her] religion." *Krieger v. Brown*, 496 F. App'x 322, 325 (4th Cir. 2012) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)). Nevertheless, "at a minimum the substantial burden test requires that a RLUIPA

7

plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004));[11] *see Krieger*, 496 F. App'x at 326 (affirming grant of summary judgment where inmate failed to "show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs" (citing *Lovelace*, 472 F.3d at 187)). Thus, no substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).

Two recent cases from the Fourth Circuit illustrate a plaintiff's responsibility with respect to demonstrating a substantial burden. In *Couch*, the plaintiff "testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin comparable in severity to eating pork." *Couch*, 679 F.3d at 200. The VDOC's grooming policy prohibited inmates from growing beards and VDOC enforced this rule by placing a noncompliant inmate in a program that "restricted or limited [the inmate's] access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time." *Id.* at 199. The Fourth Circuit concluded that VDOC's grooming policy and enforcement mechanism "fit squarely within the accepted definition of 'substantial burden'" because it placed substantial pressure on the plaintiff to modify his behavior and violate his beliefs. *Id.* at 200–01 (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995–96 (9th Cir. 2005)).

---

[11] In *Sossamon v. Texas*, 563 U.S. 277, 293 (2011), the Supreme Court abrogated *Smith*'s ultimate holding that RLUIPA allows for monetary damages against state officials acting in their official capacity.

In *Krieger*, the Fourth Circuit declined to find an inmate had demonstrated a substantial burden where prison officials denied "his requests for an 'outdoor worship circle' and certain 'sacred items' related to his religious practice of Asatru." *Krieger*, 496 F. App'x at 322. The plaintiff "asserted that deprivation of the outdoor worship circle would require him to pray indoors, and that the 'Blot' ceremony is '*best* performed outdoors.'" *Id.* at 325 (emphasis added). The Fourth Circuit concluded that the mere denial of the optimal manner for performing the "Blot" ceremony could not constitute a substantial burden where the plaintiff "failed to offer any explanation regarding the reason why indoor worship would compromise his religious beliefs." *Id.* Similarly, the inmate failed to demonstrate a substantial burden with respect to the denial of additional sacred items simply by the "blanket assertion" that "the sacred items were 'necessary' to perform 'well-established rituals.'" *Id.* at 326. The Fourth Circuit noted that plaintiff "did not identify those rituals, or explain why the absence of the sacred items had an impact on the rituals and violated his beliefs." *Id.*

*Krieger* illuminates another consideration in conducting the substantial burden inquiry. The availability to an inmate, in the most general sense, of other means to practice his or her faith is not relevant to the RLUIPA substantial burden inquiry.[12] *Al–Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009). "Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity, such as the "Blot" ceremony, in assessing whether a denial of the inmate's preferred method for engaging that religious

---

[12] Under First Amendment Free Exercise jurisprudence, in assessing whether a prison regulation passes constitutional muster, the courts consider whether an inmate is able to "participate in other religious observances of their faith." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987). Thus, in *O'Lone*, the Supreme Court concluded that the prison regulation which prevented Muslim inmates from attending a Jumu'ah prayer service was constitutional because, *inter alia*, the inmates "could freely observe a number of their [other] religious obligations." *Id.*

exercise imposes a substantial burden." *Shabazz v. Va. Dep't Corr.*, 3:10CV638, 2013 WL 1098102, at *7 (E.D. Va. Mar. 15, 2013) (citing *Krieger*, 496 F. App'x at 326; *Coleman v. Governor of Mich.*, 413 F. App'x 866, 875–76 (6th Cir. 2011)). Thus, the *Shabazz* Court recognized an earlier Eighth Circuit ruling under RLUIPA holding that an inmate failed to demonstrate that the denial of additional group study time imposed a substantial burden upon his religious exercise because prison officials already provided "other means for engaging in the *particular* religious activity:" namely, three hours of group study and worship time and time for an inmate to study in his cell. *Id.* (citing *Van Wyhe v. Reisch*, 581 F.3d 639, 656–57 (8th Cir. 2009). Similarly, the United States Court of Appeals for the Sixth Circuit concluded that prison policies which limited the inmates' access to religious radio and television broadcasts failed to substantially burden the inmates' religious exercise because the inmates "may receive religious literature via the mail and may receive visitors at the prison to discuss their religious beliefs." *Coleman*, 413 F. App'x at 876.

In Claim One (a), Sirleaf contends that Defendants substantially burdened his free exercise of religion by placing his housing unit on lockdown for a bi-annual shakedown, which prevented Sirleaf from celebrating Rosh Hashanah in September 2014. (Compl. ¶¶ 5–6, 12.) Defendants, however, have established that, while Sirleaf "was unable to participate in a group service [during the lockdown], he was allowed to observe Rosh Hashanah in his cell." (Jarratt Aff. ¶ 8.) To the extent that Sirleaf alleges that Defendants interfered with his religious exercise by prohibiting the Rosh Hashanah group services during the lockdown, Sirleaf provides no evidence to explain the religious significance of a group service for Rosh Hashanah. *See Van Wyhe*, 581 F.3d at 656–57; *Krieger*, 496 F. App'x at 325–26; *Peters v. Clarke*, No. 7:14CV00598, 2015 WL 5042917, at *7 (W.D. Va. Aug. 26, 2015) (granting summary

10

judgment to defendants on plaintiff's RLUIPA claim because plaintiff had failed to provide "any documentation of the tenets of his Rastafarian faith regarding a regular practice of group worship or what purpose group services serve in an individual's exercise of that faith"). Because Sirleaf fails to demonstrate that his inability to participate in a group Rosh Hashanah service during the September 2014 lockdown placed pressure on him to violate his religious beliefs or abandon one of the precepts of his religion, *Living Water Church of God*, 258 F. App'x at 739, Claim One (a) will be DISMISSED.

### B. Free Exercise

Similar to RLUIPA, in order for Sirleaf to survive summary judgment for his First Amendment claim, Sirleaf must demonstrate Defendants' conduct substantially burdens his religious exercise. *Whitehouse*, 2011 WL 5843622, at *5. "RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." *Id.* at *5 (citing *Lovelace*, 472 F.3d at 186). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." *Van Wyhe*, 581 F.3d at 657–58 (citing *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)). As explained above, Sirleaf has failed to demonstrate a substantial burden on his religious exercise. Accordingly, Claim One (b) will be DISMISSED.

### IV. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To survive summary judgment, Sirleaf must demonstrate: (1) "that he has been treated differently from others with whom he is

similarly situated"; and, (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual [evidence] that establish[es] improper motive." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998)).[13] If a plaintiff satisfies the above, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654 (citations omitted). "In a prison context," disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

In Claim Two, Sirleaf contends that Defendants violated his right to equal protection under the Fourteenth Amendment by "allow[ing] the KAIROS retreat to be held, but den[ying] the scheduled Jewish holy day Rosh Hashanah to be held on the 2d and last day" in September 2014. (Compl. ¶ 13.) He alleges that the KAIROS retreat was allowed to take place on September 26, 2014, the last day of Rosh Hashanah, while the lockdown was still in place. (*Id.* ¶ 9.) Sirleaf appears to compare himself to those inmates in Cluster S3 who participated in the KAIROS reunion.

Sirleaf fails to demonstrate that he is similarly situated to these inmates. The Equal Protection Clause does not require "things which are different in fact or opinion to be treated in law as though they were the same." *Moss v. Clark*, 886 F.2d 686, 691 (4th Cir. 1989) (quoting *Plyler*, 457 U.S. at 216). Instead, "the class to which [an inmate] belongs consists of the persons

---

[13] No evidence exists that Defendants' cancellation of the group Rosh Hashanah service was motivated by an intent or desire to discriminate against Sirleaf because he is a sincere believer of the Jewish faith.

confined as he was confined, subject to the same conditions to which he was subject." *Id.* (alteration in original) (quoting *Koyce v. U.S. Bd. of Parole*, 306 F.2d 759, 762 (D.C. Cir. 1962)). Here, Sirleaf was unable to attend a group Rosh Hashanah service on September 26, 2014, because Cluster S3 was on limited lockdown following confiscation of several weapons and suspected drugs. (Jarratt Aff. Encl. C, at 1.) Conversely, Cluster S3 returned to normal operations on September 27, 2014, allowing offenders who adhere to the KAIROS faith to attend the reunion that occurred on that date. Although Sirleaf alleges that the KAIROS reunion occurred on September 26, 2016, while the lockdown was still in place, he fails to demonstrate personal knowledge of this or explain his basis of knowledge for his allegation. Because Sirleaf fails to demonstrate that he was similarly situated to those inmates from Cluster S3 who attended the KAIROS reunion, this alone forecloses Sirleaf's equal protection claim. Accordingly, Claim Two will be DISMISSED.

## V. Outstanding Objections

Sirleaf "appeal[s] de novo to the United States District Court Judges . . . the Memorandum Order of [the] Magistrate Judge . . . denying 'without prejudice plaintiff's motion for the requesting of the appointment of counsel' . . . . the denying of plaintiff['s] motion for temporary restraining order . . . and motion for preliminary injunction . . . 'without prejudice'." (ECF No. 18, at 1.)

Pursuant to Federal Rule of Civil Procedure 72(a), a party may seek review of nondispositive pretrial matters by a district court judge. The Rule provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must

13

> consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a). The Court construes Sirleaf's "Appeal" as objections permitted under Rule 72(a) ("Objections").

First, to the extent that Sirleaf objects to the purported denial of his motion for a temporary restraining order or motion for preliminary injunction, Sirleaf filed no motion for a temporary restraining order or motion for preliminary injunction in the instant action. Thus, no order exists against which Sirleaf could lodge an objection.

Second, the Court construes Sirleaf to object to the Magistrate Judge's March 23, 2016 Memorandum Order denying without prejudice his Motion for Appointment of Counsel. (*See* Mem. Order 1, ECF No. 17.) Sirleaf, however, provides no argument in support of his protest of the Magistrate Judge's denial of his Motion for Appointment of Counsel. The Magistrate Judge determined that counsel need not be appointed for Sirleaf because "[t]his action presents no complex issues or exceptional circumstances" and because Sirleaf's "pleadings demonstrate that he is competent to represent himself in the action." (Mem. Order 1, ECF No. 17.) The Court discerns no error in the Magistrate Judge's conclusion. Sirleaf's Objections (ECF No. 18) will be OVERRULED.

## VI. Conclusion

Accordingly, the Motion for Summary Judgment (ECF No. 23) will be GRANTED. Sirleaf's claims will be DISMISSED. Sirleaf's Objections (ECF No. 18) will be OVERRULED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

M. Hannah Lauck
United States District Judge

Date: FEB 16 2017
Richmond, Virginia

15